My name is Ed Sheehy Jr. I am representing Corbin Douglas Sime, who is appealing to this court from his 262-month sentence, where the district court imposed that sentence at the bottom end of the advisory guideline. Now, the court prior to this hearing asked us to address two cases, and that's my intention here today. The first one I want to talk about is Diaz-Arguito, where the court in that case just basically discussed the advisory guideline, and that was its basis for imposing the sentence, and this court reversed the district court. In this particular case, I will admit that the court, as is shown on page 23 of the excerpts, after it imposed the sentence of 262 months as being a reasonable sentence, said that the sentence, of course, reflects the defendant's prior drug convictions and the risk for recidivism. As we had argued to the district court at sentencing, those prior offenses were already being counted before you got to that advisory guideline, first of all because of the 851 information that enhanced his mandatory minimum from 5 years to 10 years. As for the risk of recidivism, as was pointed out to the district court, this particular man had served his federal sentence, completed it in 1999, and had not been involved in any criminal activity for 6 years. The problem with his prior offenses is that this particular individual had never gotten any drug treatment, and that, of course, was our argument for why he was now again in trouble with the law. Let me ask you a question. I thought that you were not disputing that the district court properly calculated the guideline range. And I am not. The district court properly calculated the guideline range. The issue is whether there is a site between, say, 120 months and that 262 months that is more reasonable than just basically sentencing him at the bottom end of that advisory guideline range. Well, obviously, the district court has to discuss 3553, but you don't have to discuss it broadly. That's right. And there is some discussion of 3553 here. I guess the – and while you have to consider all of 3553, you don't have to – you know, it has to show a recognition of it and not necessarily state that. But the court also doesn't have to – well, you have to consider it. You don't have to weigh every factor equally. And so what about – you know, so you've got to show me it's unreasonable not that I would sentence this person differently. You know, that's – and that's – therein lies the dilemma, and I think that that's something that we're struggling with as a court. You know, we're practicing on a lot of these right now here. And trust me, we see a lot of things that we would not sentence a person – you know, sometimes we might give them more, sometimes we might give them less. That doesn't per se mean it's reasonable or unreasonable or it's something that we can – we're not here for a redo. Right. And I fully understand that. The thing here, though, is that the statute, 3553, says that the court is to impose a sentence that is sufficient but not greater than necessary to serve all the purposes of sentencing. And that's the point here is that this 262 months is greater than necessary because it's criminal history before you get to the career offender guideline. And that guideline applied. I'm not saying it didn't apply. I mean, it's still going to be considered. It's still going to be considered by the district court. And we have here a man that was 47 years old. With the sentence that the district court imposed, he's going to be 70 years old before he ever gets out of prison. Well, let me put – Life starts at 70, don't you know that? I do know that, Your Honor. Or 90. But, you know, let's say I'm a judge from – you know, I mean, judges come in all sorts of different shapes. And you're saying, well, they should have given them treatment. Let's say I'm a judge that looks at it differently and says, you're 47 years old. You've had a lot of brushes with the law. You can't get better unless you want to get better. You've certainly had a lot of time to wake up. You're not – you know, you're not immature. You're not – you know, you've gone to prison. You have the idea that it's not good. But you still haven't done anything about it. Why should – why would a judge then be required to say, well, you know, since you've never been to a program, you know, I've got to give you one now, or I've got to give you a discount because you've never on your own gone to a program, even though you – you know, why isn't that a reasonable way to look at it, to say, you haven't gotten it. You're hard-headed. We, you know, that's – so the only way is I'm not going to keep letting you out so that you can re-offend. Well, first of all, the court did recognize that he had never had treatment because the court recommended the 1,500-hour drug treatment program. But second of all, as I said – But thought he should do it in custody. That's right. And I think that was to make sure he got it. But second of all, this man, even though he had never had drug treatment, had been out for – out of federal supervision for six years without ever committing an offense, particularly a drug offense. Being charged with an offense. Charged, yeah. We don't know. Well, I mean, there was no indication that he had been involved in anything because he was working apparently as a logger in Deer Lodge. If I understand your position, it is that if there had never been Booker, pre-Booker, you wouldn't be here. You wouldn't have any appeal. But somehow you were reading 3553 as raising a reasonableness issue. So a guideline sentencing is not reasonable. That's what your argument is to be. Now, I think Congress would be very surprised, as well as the people on the Supreme Court, if we so held. Well, except that the Ninth Circuit has held that – or, well, I guess it hasn't addressed the issue of whether or not it is presumptively reasonable. Other courts have and said that it's not. Well, then let me make an argument for you. If there's cases like Zavala and Cardi, which are not yet final, is if you lose otherwise, do you want the benefit of those to see if that helps you out? I would like to have the benefit of those to go back and have this case remanded for resentencing so that the court can consider something other than just the advisory guideline. Because the government's argument at sentencing was that's the only reasonable sentence. And the Sentencing Commission has determined that's reasonable. Well, I guess what I'm saying is that if I were in your position, the argument that I might make, if I didn't sell the first part of it, would be, say, my client's not going anywhere. Don't hurry up and wait until Zavala and Cardi are final. Then look at those and say, does that in any way alter what we have here? Because let's just say if Zavala evolves into something else. I can't say where until it's final. I mean, there's a number of things that can happen in this court, as you know. But let's say if Zavala came out and said, well, a guideline sentence is presumptively reasonable. Well, that's not going to help you a whole lot. But on the other hand, if Zavala said something else, maybe that might be something that would say, okay, go back and have the district court look at that. I mean, you might come up in the exact same place, but you might get another look. And that may be appropriate to wait until those are certainly final. You know, you're right. If Zavala came out and said a guideline sentence is presumptively reasonable, that does not help. That kind of hits the last nail in the coffin. Yeah, or that Judge Lovell failed to sufficiently address the 3553 factors. He's at Helena, right? Yes, he's on senior status, Your Honor. Yeah, well, I know him. Is the courthouse still at that place called Last Chance Gulch? No, it's not, Your Honor. They built a new courthouse that's now down by Carroll College, and it's called the Paul G. Hatfield Courthouse. I see. What street's it on? It is a side street, Your Honor. It's off of Last Chance Gulch. I believe it's 14th Avenue. 14th Avenue. Thanks. Thank you. All right. Thank you. Tom. Tom. Good evening, Your Honors. For the record, I'm Lori Sook from the United States Attorney's Office in Montana. I think the issue here is whether Judge Lovell sufficiently considered the 3553A factors. In this case, there doesn't appear to be any language or any intent on Judge Lovell to presume the guideline range reasonable. He didn't use those words, as were used in the Zavala case, what the court found troubling in the Zavala case, where an order was actually put out prior to the sentencing, saying this is the guideline range, this is reasonable. That doesn't seem to be the problem here. If there is a problem, it is whether the judge sufficiently considered the 3553A factors. The United States believes this case is distinguishable from Diaz-Argueda because he didn't simply stop at the guideline range, although certainly he didn't articulate an exhaustive analysis of 3553A. He did identify, in addition to the guideline range, 3553A factors. Recidivism falls within the need to deter future criminal conduct by this defendant, arguably also protection of the public from future criminal conduct. And the defendant's criminal history, of course, is his history and characteristics. And so the Judge Lovell here did do more than what was done in Diaz-Argueda. And the question the court has to answer is whether it's enough. The United States believes that it is enough, that he did not simply presume guideline range reasonable and start there. And one thing that the Zavala court did mention was that sometimes a starting point, such as the guideline range, may become the finishing point because there's just simply nothing that moves the court off of that guideline range. And in this case, the question to ask is, is there something here that hits the court that is so unreasonable that the judge abused his discretion in fashioning his sentence? In the view of the United States, that's the question the court has to answer. We would have you answer it in the negative and say that no. You know, whether we would have come up with a different sentence or done a different analysis. In this case, Judge Lovell did comport with the post-Booker line of cases. And he did, in his view, this was a reasonable sentence. That's exactly what he said. He said it was reasonable. And then he identified the specific 3553A reasons why he thought it was. Well, let me ask you the same question that I asked appellants counsel, in that let's assume that I agree with you on that the 3553 coverage is adequate, but we do have Zavala and Cardi not quite being final and possible, you know, if, I mean, there could be possible permutations. What is your view on whether we should wait until those cases get final before we decide this? Your Honor, the United States would have no objection to that. Certainly, as you are correct, there's really no way to prognosticate about what will happen with those cases. The way that Zavala sits right now, not being final, the United States doesn't believe that it helps the defendant because there was no presumption here. But if it comes down the other way, that, in fact, the advisory guideline range is presumptively reasonable, certainly that would greatly assist the court in deciding this case. So we would have no objection to you holding a decision on this case until then. Thank you. Thank you. So, Mr. Hubley was the assistant on this case? He was, Your Honor. He retired from our office in January of this year. Okay. All right. Thank you. Any rebuttal? Thank you. All right. This matter will be submitted. And
judges: Reavley , Pregerson, Callahan